The Honorable Barbara King State Representative 206 Tulip Circle Helena, AR 72342-1620
Dear Representative King:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 If Community Health Centers are privately owned facilities, Federally Qualified Health Centers and provide preferential pricing only to patients of the health center, would A.C.A. § 17-92-607 prohibit the licensing of pharmacies within Arkansas Community Health Centers offering a program of preferential medicine prices pursuant to § 340B of the Public Health Service Act, codified at 42 U.S.C. § 256b?
It appears that "community health centers" are private, nonprofit institutions, all of which are members of another private, nonprofit institution, Community Health Care Centers of Arkansas, Inc. Their reported purpose is to provide a wide variety of "primary care" medical services to patients regardless of their insurance status.[1] I have not been informed whether such centers provide emergency room services and other in-patient services a hospital would provide, outpatient services such as a doctor's office would provide, both or neither.
Section 340B authorizes "covered entities" to purchase pharmaceuticals at discounted prices for distribution to their patients. I am informed, and for purposes of my analysis will accept as correct, that community health centers qualify as "covered entities" eligible to purchase drugs at discounted prices for their patients under § 340B of the Public Health Services Act. At issue, then, is whether under state law community health centers would be entitled to obtain licenses for in-house pharmacies to sell § 340B-discounted drugs to their patients.
RESPONSE
In Arkansas, the general state-law requirements for licensure as a pharmacy are set forth at A.C.A. §§ 17-92-403 through 405 (Repl. 2002). In my opinion, it is unclear under Arkansas law precisely what facilities are "hospitals" and thus are restricted by A.C.A. § 17-92-607 (Repl. 2002), which prohibits nonprofit hospitals from holding pharmacy permits for the retail sale of pharmaceuticals. If the statute applies, I believe a center could not engage in "retail" sales of pharmaceuticals. Even if community health centers do not qualify as "hospitals" and thus are not restricted by A.C.A. § 17-92-607, federal law — i.e., § 340B itself — would restrict drugs purchased at discount and would allow their sale only to a "patient of the entity."
Initially, I will address the possible applicability of A.C.A. §17-92-607, which provides:
 (a) It shall be unlawful for any nonprofit, tax exempt, or governmentally funded hospital to acquire direct or indirect interest in or otherwise hold directly or indirectly a licensed pharmacy permit pursuant to the provisions of § 17-92-405, for the sale at retail of drugs and medicines.
 (b) However, nothing contained in this section shall be construed to prohibit any hospital having a direct or indirect interest in or otherwise holding either directly or indirectly a permit prior to March 28, 1975, from continuing to have an interest in or holding the permit. Nothing contained in this section shall be construed to prohibit any hospital so holding a permit prior to March 28, 1975, from receiving a renewal of the permit.
Subsection 17-92-602(2) of the Code provides that the term "hospital" as used in the statute just quoted shall have the meaning set forth at A.C.A. § 20-9-201. Subsection 20-9-201(6) defines the term "hospital" as follows:
 "Hospital" means a public health center, a general, tuberculosis, mental, or chronic disease hospital, or a related facility such as a laboratory, outpatient department, nurses home or training facility, or a central service facility operated in connection with a hospital. An establishment furnishing primarily domiciliary care is not within this definition[.]
In your opinion request, you note that A.C.A. § 17-92-607 specifically applies to "public health centers" but does not specifically apply to private centers. However, the definition of "hospital" also includes the category of "a general . . . hospital" — a definition that might include a community health center, even if privately owned. Under the circumstances, I am unable definitively to opine whether a community health center is or is not a "hospital."[2]
At least part of the purpose of A.C.A. § 17-92-607 is discussed inArkansas Hospital Association v. Arkansas State Board of Pharmacy,297 Ark. 454, 457-58, 763 S.W.2d 73 (1989). In that case, the Arkansas Supreme Court upheld A.C.A. § 17-92-607 as constitutional on grounds that the General Assembly may reasonably have wanted to avoid anticompetitive retail sales of drugs purchased at discount by nonprofit hospitals. In support of this conclusion, the court observed:
 The General Assembly may well have been aware of the diversion market and decided to limit its operation. Obviously, nonprofit hospitals could not rationally be prevented from buying authorized drugs for their own in-house use, but they rationally could be prevented from selling drugs at retail to someone who has no present connection with the hospital. This would eliminate the possibility of a nonprofit hospital purchasing drugs at a discount for its own use, or in-house use, and then diverting those drugs to its retail pharmacy. It would also prevent it from purchasing drugs for retail use from other nonprofit institutions. Thus, a rational basis exists which demonstrates a connection with a legitimate state objective.
Id. at 457-58. As this passage suggests, A.C.A. § 17-92-607(a) would preclude a hospital from selling discounted drugs to members of the public who have "no present connection with the hospital," 297 Ark. at 457-58, but would not prohibit a hospital from purchasing discounted drugs "for its own use, or in-house use" — a condition that would appear at least to allow a covered entity to dispense discounted drugs to its own patients for on-premises consumption.[3]
Similarly, federal law provides that entities covered under42 U.S.C. § 256b (§ 340B of the Public Health Services Act) are entitled to purchase discounted drugs for sale to what you characterize as "a limited population." Specifically, 42 U.S.C. § 256b(a)(5)(B) expressly forbids a covered entity to "resell or otherwise transfer [a] drug to a person who is not a patient of the entity." It appears that Congress included this provision in order to maintain consistency with the Robinson-Patman Antidiscrimination Act, 15 U.S.C. § 13et seq., which prohibits price discrimination by discount sales to particular customers if the effect "may be substantially to lessen competition," and the Nonprofit Institutions Act,15 U.S.C. § 13c, which sets forth the following exemptions to the Robinson-Patman Act:
 Nothing in the Act approved June 19, 1936, known as the Robinson-Patman Antidiscrimination Act, shall apply to purchases of their supplies for their own use by schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit.
In a similar attempt to keep Arkansas law consistent with the Robinson-Patman Act, A.C.A. § 17-92-607(a) forbids altogether the retail sale of pharmaceuticals in nonprofit hospitals. In Arkansas HospitalAssociation, the Arkansas Supreme Court justified this additional proscription as follows:
 The Robinson-Patman Act, 15 U.S.C. § 13, prohibits drug diversion by making the retail sale of pharmaceuticals purchased at the discount nonprofit rate unlawful. The General Assembly may well have been aware of the federal law and realized that even though drug diversion was a federal crime, it still was a growing problem; that simply classifying something as a crime did not necessarily solve the problem. Thus, the General Assembly may have chosen to limit diversion by disallowing any connection between a nonprofit hospital and a retail pharmacy.
 The fact that the Arkansas statute is broader in scope than the Robinson-Patman Act does not invalidate the state statute, for, in applying the rational basis test, the judiciary will not act as a super legislature to question the means employed to accomplish the state objective. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 316, 317 (1976). "As long as the classificatory scheme . . . rationally advances a reasonable and identifiable governmental objective, we [the judiciary] must disregard the existence of other methods of [achieving the legislative goal] that we, as individuals, perhaps would have preferred." Schweiker v. Wilson, 450 U.S. 221, 235 (1981).
297 Ark. at 458. The state statute, then, would preclude hospitals altogether from selling pharmaceuticals at retail.
In short, subject to the qualification set forth at A.C.A. §17-92-607(b), the community health centers at issue, should they be deemed "hospitals" under A.C.A. § 17-92-607, must forbear engaging in any sales of pharmaceuticals "at retail," instead limiting their use of drugs purchased at a discount to "own use" dispensations of a sort that, pending further legislative or judicial clarification, I can interpret as permitting at least on-premises consumption of drugs by a center's own patients. Any facility wishing to open a pharmacy in order to make such authorized dispensations must obtain a license to do so from the Arkansas Board of Pharmacy.
Conversely, should a community health center not be deemed a "general hospital" subject to the restriction set forth in A.C.A. § 17-92-607, it could only sell drugs for other than its "own use" at full retail prices, and only then if duly licensed by the Arkansas Board of Pharmacy under A.C.A. § 17-92-403.[4]
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] My inquiries reveal that community health care centers are and will continue to be unrelated to the "community-based health care cooperatives" recently authorized by Act 660 of 2003. The recent legislation defines a "community-based health care access program" as one "administered by a community-based health cooperative whereby hospital, medical, health education, and other health care services may be furnished by or through provider members of a community-based network, or combination of networks, to uninsured residents of that community who are members of the program." The Act defines a "community-based health network" as "a contract-based network organized by a community-based health cooperative to provide or support the delivery of health care services to members served by the community-based health care access program." The Act further restricts program services to individuals within a specified age and income range.
[2] The Code contains no definition of the term "general hospital." Somewhat curiously, A.C.A. § 18-46-102(3) defines the term "hospital" as designating "a person that maintains an establishment in which sick and injured persons are given medical and surgical care." Section20-64-201(5) of the Code defines the term as denoting "an institution for the care and treatment of the sick and injured, approved by the Director of the Department of Health as proper to be entrusted with the custody of narcotic drugs and the professional use of narcotic drugs under the direction of a physician, dentist, or veterinarian." Random HouseWebster's Unabridged Dictionary (2d ed. 1999) defines the term as designating "an institution in which sick or injured persons are given medical or surgical treatment." Although one or more of these definitions might apply to a community health center, I am neither situated to make the factual determination that they do nor to look beyond the definition expressly invoked in the pertinent subchapter of the Code.
[3] In Abbott Laboratories v. Portland Retail Druggists, 425 U.S. 1
(1976), the United States Supreme Court addressed what pharmaceutical sales by hospitals might be characterized as "for their own use" under the Nonprofit Institutions Act. The Court interpreted this term to cover various inpatient uses and a restricted range of outpatient uses. Unfortunately, the court in Arkansas Hospital Association failed to provide similar guidance regarding the scope of the term "own in-house use" as applied under state law.
[4] Subject to various conditions, A.C.A. § 27-92-403 identifies various sorts of pharmacies: general pharmacies established by a licensed pharmacist; specialty pharmacies subject to the restriction set forth at A.C.A. § 17-92-607; hospital pharmacies; ambulatory care center pharmacies; pharmacies associated with governmental funded institution that provide inpatient pharmaceutical services; and charitable clinic pharmacies.